UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**NANCY FORD,**
                           **Plaintiff,**

                                                                         **LEAD CASE**
                  **-v-**                                             **1:05-CV-1198**

**BALLSTON SPA CENTRAL SCHOOL DISTRICT; DR. JOHN R. GRATTO, Individually and in his official capacity as Superintendent of Schools; PATRICIA HEIDELMARK, Individually and in her official capacity as Chair of the Committee on Special Education; CARROL BREWER, Individually and in her official capacity as the Director of Pupil Services, THE BOARD OF EDUCATION OF THE BALLSTON SPA CENTRAL SCHOOL DISTRICT; KATHY JARVIS, Individually and in her official capacity as Member of the Board of Education of the Ballston Spa Central School District; KEITH STEWART, Individually and in his official capacity as Member of the Board of Education of the Ballston Spa Central School District; EUGENE HICKOK, Individually and in his official capacity as Member of the Board of Education of the Ballston Spa Central School District; and PATRICK LEANZA, Individually and in his official capacity as Member of the Board of Education of the Ballston Spa Central School District;**
                                **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**TRACY LYNN WALL,**
                           **Plaintiff,**

                                                                           **MEMBER CASE**
                  **-v-**                                             **1:05-CV-1199**

**BALLSTON SPA CENTRAL SCHOOL DISTRICT; DR. JOHN R. GRATTO, Individually and in his official capacity as Superintendent of Schools; PATRICIA HEIDELMARK, Individually and in her official capacity as Chair of the Committee on Special Education; CARROL BREWER, Individually and in her official capacity as the Director of Pupil Services, THE BOARD OF EDUCATION OF THE BALLSTON SPA CENTRAL SCHOOL DISTRICT; KATHY JARVIS, Individually and in her official capacity as Member of the Board of Education of the Ballston Spa Central School District; KEITH STEWART, Individually and in his official**

**capacity as Member of the Board of Education of the Ballston Spa Central School District; EUGENE HICKOK, Individually and in his official capacity as Member of the Board of Education of the Ballston Spa Central School District; and PATRICK LEANZA, Individually and in his official capacity as Member of the Board of Education of the Ballston Spa Central School District;**

             **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES IN BOTH CASES:
Galvin & Morgan
James E. Morgan, Esq., of Counsel
217 Delaware Avenue
Delmar, New York 12054
Attorneys for Plaintiffs

Girvin & Ferlazzo, P.C.
Gregg T. Johnson, Esq., of Counsel
Jacinda Hall Conboy, Esq., of Counsel
Scott P. Quesnel, Esq., of Counsel
20 Corporate Woods Boulevard
Albany, New York 12211-2350
Attorneys for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

  By Memorandum-Decision and Order dated February 22, 2007 (Dkt. No. 34), this Court consolidated these two civil rights actions and granted defendants' unopposed motion to dismiss certain claims. Specifically, the Court dismissed all claims against all individual defendants in their individual capacities, in accordance with the parties' stipulation; dismissed all "official capacity" claims against Kathy Jarvis, Keith Stewart, Eugene Hickock, and Patrick Leanza, all members of the Board of Education of the Ballston Spa Central School District ("Board of Education"); and dismissed the tenth, eleventh and twelfth causes of action.

-2-

Presently before the Court is a motion (Dkt. No. 42) by defendants for summary judgment dismissing both actions. For the reasons set forth below, the motion is granted.

## THE COMPLAINTS

Both complaints claim that beginning in 1965, defendant Ballston Spa Central School District ("District") administered the Head Start Program pursuant to a federal grant for which the District applied annually. Plaintiffs Ford and Wall had been employed by the District at the Head Start Program since 1975 and 1987 respectively. At the times in issue, Ms. Ford held the position of Parent Education/Home Based Manager, and Ms. Wall held the position of Region Manager. On April 27, 2004, the Board of Education voted to cease administering the grant, and as of June 30, 2004, the District ceased to administer it. As a result, plaintiffs were no longer employed by the District.

The complaints further claim that plaintiffs engaged in activities protected by the First Amendment. One such activity was speaking on issues of public concern. When first hired by the District, plaintiffs were not required to undergo competitive examinations. In 2002, they were advised that they would have to undergo such examinations. Plaintiffs believed they should be exempt from the examinations and made statements to the press criticizing the District's handling of the issue. On January 8, 2003, plaintiffs addressed a Board of Education meeting on the issue. According to plaintiffs, defendant Dr. John R. Gratto, Superintendent of Schools, reprimanded them for their statements. On February 21, 2003, both plaintiffs underwent the examination, which they passed.

The complaints also allege that plaintiffs engaged in associational activity protected by the First Amendment. Before the District began considering relinquishment of the Head Start

-3-

Program grant, plaintiffs and other Head Start Program employees engaged in collective bargaining and other union organizing activity. In December 2002, Head Start Program employees contacted the Civil Service Employees Association ("CSEA") for such purpose and in August 2003, the District recognized CSEA as the bargaining representative for certain Head Start Program employees, but not plaintiffs. Thereafter, plaintiffs and other non-recognized Head Start Program employees attempted to engage in union activity, including collective bargaining activity, with the District, but the District "refused to negotiate and collectively bargain" with them.

Plaintiffs claim that Dr. Gratto recommended that the District relinquish the grant and that he did so solely for the purpose of retaliating against plaintiffs for engaging in protected activities. Plaintiffs further claim that the other defendants knew of and ratified this retaliatory conduct.

Each plaintiff's complaint sets forth the following causes of action: first, denial of civil rights under 42 U.S.C. § 1983, specifically denial of her rights to freedom of speech, freedom of association, freedom of collective bargaining, freedom from retaliation, and equal protection; second, adverse employment action in retaliation for her exercising her right to free speech by speaking out on matters of public concern; third, adverse employment action in retaliation for her exercise of the right to freedom of association; fourth, conspiracy to retaliate against her for exercising her constitutional rights; fifth, denial of her right to collective bargaining; sixth, unequal treatment with intent to inhibit or punish her exercise of her constitutional rights; seventh, municipal liability under *Monell v. Department of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978), for depriving plaintiff of her constitutional rights; eighth, deprivation of plaintiff's

-4-

constitutional rights in accordance with the custom, policy and/or practice of the School District and Board of Education by voting to relinquish the Head Start Program grant; and ninth, deprivation of plaintiff's constitutional rights in accordance with the custom, policy and/or practice of the School District and Board of Education by voting to relinquish the Head Start Program grant.  As noted, the tenth, eleventh and twelfth causes of action have been dismissed.  Each plaintiff seeks declaratory and injunctive relief, monetary relief, and an award of costs and attorney's fees.

## APPLICABLE LAW

Summary judgment is appropriate "where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc*., 448 F.3d 573, 579 (2d Cir. 2006) (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

The Local Rules of the Northern District provide a procedural framework for the resolution of summary judgment motions, placing the burden on the parties to present the evidence that either supports or defeats the motion.  The movant must first submit a Statement of Material Facts setting forth the undisputed facts upon which it relies and specific citations to the record where each fact is established.  *See* N.D.N.Y.L.R. 7.1(a)(3).  The court must satisfy itself

that the cited record evidence supports the movant's assertions of fact and that those facts show that the movant is entitled to judgment as a matter of law; a Statement of Material Facts is not a substitute for evidentiary proof of the facts. *See Zhanghi v. Incorporated Vill. of Old Brookville*, 752 F.2d 42, 47 (2d Cir. 1985); *see also New York State Teamsters Conf. Pension and Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005).

Once the movant submits a properly supported Statement of Material Facts, the non-moving party must file a response thereto. "Any facts set forth in the [movant's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." N.D.N.Y.L.R. 7.1(a)(3); *accord Adirondack Cycle & Marine, Inc. v. American Honda Motor Co.*, 2002 WL 449757, *1 (N.D.N.Y.). The Second Circuit has endorsed this rule, noting: "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties.'" *New York State Teamsters*, 426 F.3d at 649 (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)).

Here, defendants have submitted a Statement of Material Facts properly supported by references to competent record evidence. Plaintiffs, although represented by counsel, have failed to submit a response thereto. Thus, the Court accepts as true the facts as set forth in defendants' Statement of Material Facts. *See* N.D.N.Y.L.R. 7.1(a)(3). In any event, a review of plaintiffs' submissions discloses no evidence raising a material question of fact on any issue.

**FACTS**

The majority of the facts cited in defendants' properly supported Statement of Material Facts are consistent with the factual allegations in the complaint. Certain evidence cited in the

Statement of Material Facts clarifies the complaint and/or militates against the conclusory allegations in the complaint. The Court summarizes such evidence as follows.

At the times in question plaintiffs held administrative positions in the Head Start Program administered by the District pursuant to a federal grant. At some point, a group of Head Start Program employees sought participation in the New York State Employees' Retirement System. Apparently in late 2002, the Saratoga County Civil Service Department ("CSD") determined that Head Start Program employees would be required to take competitive Civil Service examinations. Plaintiffs and other Head Start Program employees believed they should be permitted to retain their positions without taking examinations.

The determination that they would have to take Civil Service examinations prompted both plaintiffs to attend the January 8, 2003 Board of Education meeting. At the meeting, Ms. Wall read aloud the following statement:

> We are here in support our Family Education Coordinator, Patricia Heidelmark, who informed us of her meeting with you during which she requested your support in advocating for the grand fathering in of the many Head Start employees who are becoming a part of the Civil Service System.
>
> After our meeting with Dr. Grotto, Carol Brewer, Pat Nugent and Patty Heidelmark and representatives Mr. Kalinkewicz and Ms. Dahoda on Monday, January 6th, we felt the need to come to this Board Meeting to continue advocating for our Head Start Program.
>
> For those of you who were not a part of the meeting with Patricia Heidelmark, I would like to share a brief history of our program to better help you understand our current situation.
>
> The Head Start Family Education Program of Saratoga County has been serving area children and families since its beginning in 1965. The Ballston Spa School District has been our Grantee from the start. Initially, the program served only Ballston Spa families. As the needs of families were recognized, the Head Start Family Education Program grew to serve

families in Galway, Corinth, Saratoga Springs, Mechanicville, Stillwater, Shenendehowa, Waterford, South Glens Falls and Schuylerville school districts. Over the years all of our Federal reviews have found our program to be exemplary in its service to families, due in part to a solid base of long-term employees. Many of our staff have been with Head Start for 15 to 25 years.

For 38 years our Head Start Program was viewed as a separate program under the granteeship of the Ballston Spa School District but as Mr. Kalinkewicz, the county Civil Service representative working with us, said there was an unwritten agreement between the County Civil Service Department and the Ballston Spa School District to keep Head Start out of the Civil Service System because of the uniqueness of the program. A year ago, after 37 years, all of our employees were finally given the opportunity to take part in a retirement system. We were extremely pleased and not opposed to becoming a part of the system.

Shortly after this, we were told we must now become a part of the Civil Service System. At a meeting with Mr. Kalinkewicz in March of 2001 we were told about the acquisition process and the probability of grandfathering in the current employees. The Civil Service System's purpose is to ensure fair and equal opportunities of employment and quality programming, not to displace currently employed people and destroy well-run programs. We heard no more until December 6th when simultaneously we found our jobs posted as vacant on the Civil Service web and received individual letters telling us we must take exams and finish within the top three to retain our positions.

After some investigation we have been told there are many ways the county could have implemented the system and exempted current staff from the test taking process. An unknown person from the State Civil Service Department in Albany sent us a copy of the enclosed law, which states just this. However, Mr. Kalinkewicz said the law does not apply to us and rather than implement other options, the county has decided, "to let the process unfold and see what happens".

The potential loss of 53 seasoned staff would negatively impact the high standards of service to our county's children and families. I am sure this regulation was written for such situations. We are asking for your help. Please contact Mr. William Baker, Director of Saratoga County Personnel Department and Mr. George Sinnott, Commissioner of Civil Service, to ask for this decision to be reversed. I greatly appreciate your time and assistance in our efforts to save the Head Start Family Education Program of Saratoga County, as we know it.

The record also contains two local newspaper articles describing the meeting and quoting statements by Ms. Wall on the examination issue.

At the January 8, 2003 meeting and again at a meeting with plaintiffs and other Head Start Program administrative employees on January 10, 2003, Dr. Gratto stated that the District had no control over the examination requirement. He added that the District had contacted CSD, which confirmed that Head Start Program employees could not be exempted from the requirement. The District actively attempted to help all Head Start Program employees prepare for the Civil Service examinations by purchasing study materials and providing workshops. On February 21, 2003, the District Head Start Program employees took the examinations. Both plaintiffs passed.

In March 2003, CSEA informed the District by letter that the Head Start Program employees had selected CSEA as their representative union. The New York State Public Employee Relations Board ("PERB") determined that the Head Start Program administrators should not be in the same bargaining unit as the employees they supervised. By May 2003, plaintiffs knew that, as administrators, they were not eligible for membership in the bargaining unit being formed by Head Start Program staff. On or about August 6, 2003, the Board of Education voted to recognize CSEA as the bargaining unit for the non-administrative Head Start Program employees. As a result, by December 10, 2003, the majority of the approximately 110 employees of the Head Start Program were represented by CSEA.

The great majority of District employees were union members. The District regularly bargained with five different employee unions. Neither Dr. Gratto nor any Board of Education member ever expressed a desire to discontinue administering the Head Start Program due to anything plaintiffs said about the examination requirement or their interest in unionizing.

Meanwhile, as early as 1993, members of the Board of Education and District administrators had expressed concerns about the direct and indirect costs of the Head Start Program, including the expense to District taxpayers and potential legal liabilities for the District. From 1993 to 2004, the Board of Education annually discussed whether the District should continue to sponsor the program. The Board of Education noted that only about one-third of the students served by the program resided in the District.

The Board of Education hired Dr. Gratto as Superintendent of Schools in August 2002. Dr. Gratto and the Board of Education agreed that examining the Head Start Program was an administrative priority.  According to Dr. Gratto, he and the Board of Education considered the following issues:

> a. The amount of time and resources the District staff was devoting to a program that was not within the primary purpose and responsibility of the District which is to provide education to students in kindergarten through twelfth grade;
> b. The space required to run the Head Start program;
> c. The fact that 70% of the children who received services through the District's Head Start program were outside of the District;
> d. The "indirect costs" to the District of running the Head Start program, which former Superintendent Gratto estimated to be approximately $30,000 per year;
> e. The fact that District tax dollars from the District's tax payers were going to fund a program in which 70% of the students lived or attended school outside of the District;
> f. Questions from the District's Business Manager about the appropriateness of the District leasing space outside of the District;
> g. The fact that the Board had no control over the sites that were outside of the District even though we were responsible for the program and liable for those employees and students; and
> h.  The fact that the District could not reach its its potential for District students because of the time and resources allocated to the Head Start program and  number of employees and students serviced by the head Start program who lived or attended school outside of the District.

At a meeting on April 27, 2004 the Board of Education passed Resolution #348 resolving

-10-

that the District would "cease administration of the Head Start grant effective June 30, 2004, or until the United States Department of Health and Human Services appoints an interim grantee to administer the Head Start grant, whichever is later[.]" The Community Development Institute ("CDI"), an independent contractor, undertook interim responsibility for maintaining the program effective July 1, 2004, and the District ceased to administer it.

Each of the four Board of Education members named as party defendants submitted an affidavit. Each specified in non-conclusory terms his or her motives for voting in favor of relinquishing the Head Start Program grant. Each affirmed that his or her decision was not influenced by plaintiffs' statements regarding the Civil Service examinations. Eugene R. Hickok noted: "It was my understanding that the Board had no control over the civil service testing as it was a requirement by the County over which the Board had no control." Patrick Leanza and Keith Stewart made the same averments. Each also affirmed that his or her decision was not influenced by any unionizing activities. Mr. Hickok added: "The vast majority of the District's employees are members of unions and the Board has always supported the relationship between the District and the various unions that represent the majority of the District employees. Furthermore, as soon as the union was presented to the Board for recognition the union was immediately recognized." The others' affidavits included similar statements.

In May 2004, Ms. Ford notified the Board of Education of her intention to retire effective June 30, 2004, and on June 22, 2004, the Board of Education accepted her retirement request. Ms. Wall resigned her employment with the District effective June 30, 2004. On July 1, 2004, immediately upon the termination of their employment with the District, both plaintiffs became employed by CDI, the interim administrator of the program. Neither plaintiff lost even a day's

-11-

employment as a result of the transition. Neither plaintiff was subjected to disciplinary action between 2002 through the termination of her employment by the District.

## DISCUSSION

**Elements of a section 1983 claim**

Recovery under 42 U.S.C. § 1983 is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law. *See Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985). There is no dispute that the Board of Education and the District are state actors. The primary issues on this motion concern plaintiffs' claims that defendants infringed their First Amendment rights to freedom of speech and association and denied them equal protection.

**First Amendment – speech – retaliation**

Plaintiffs make no claim that defendants prevented them from speaking; rather, they claim that defendants retaliated against them for the protected activity of speaking publicly about the requirement that they take the Civil Service examinations. They rely on the written statement Ms. Wall read aloud at the January 8, 2003 Board of Education meeting and on two newspaper articles attached to their papers in opposition to summary judgment.

A public employee who makes a free-speech retaliation claim under section 1983 must show that: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (citation omitted). Whether speech addresses a matter of public concern

-12-

and is thus protected is a question of law that "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48, 148 n.7 (1983). Speech is on a matter of public concern "if it relates 'to any matter of political, social, or other concern to the community.'" *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick*, 461 U.S. at 146).

The statement Ms. Wall read aloud at the January 8, 2003 meeting and the statements in the two newspaper articles relate to personal – not public – concerns. In particular, Ms. Wall stated that the Head Start Program employees were at the meeting to request the Board of Education's support "in advocating for the grandfathering in of the many Head Start employees who are becoming a part of the Civil Service System"; that they had learned of "the probability of grandfathering in the current employees"; that on December 6, 2002, they "found [their] jobs posted as vacant on the Civil Service web" and received letters stating that they "must take exams and finish within the top three to retain [their] positions"; that they "have been told there are many ways the county could have implemented the system and exempted current staff from the test taking process"; that nevertheless the county has decided "to let the process unfold and see what happens"; that there is a potential for "loss of 53 seasoned staff"; and that the employees ask the Board of Education to help them by contacting certain officials "to ask for this decision to be reversed." The newspaper articles reported statements by Ms. Wall to the same effect.

The statements in issue clearly concern the individual employment interests of plaintiffs and other Head Start Program employees who hoped to avoid taking the competitive examinations because poor performance might cause them to lose their positions. The desire of plaintiffs and others to retain their positions is not a matter of public concern. The matter is not

transformed into one of public concern by Ms. Wall's assertion that the potential loss of staff "would negatively impact the high standards of service to our county's children and families." *See, e.g., Connick*, 461 U.S. at 148 (finding public employee's statement that her transfer would affect discipline and morale in the workplace did not address a matter of public concern; stating that, "[w]hile discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of [the employee's speech] is not to evaluate the performance of the office[.]"). Plaintiffs' advocacy focused on their and their co-workers' personal interests in retaining their positions, not on assuring that the Head Start Program would employ the most highly qualified people, nor on addressing any other matter of concern to the community at large. On the undisputed facts regarding the content, form, and context of the statements, the Court finds as a matter of law that the speech in issue was not protected speech.

In any event, plaintiffs fail to show a causal connection between their speech and the only adverse employment action alleged, the Board of Education's decision to cease administering the Head Start Program grant.[1] The record is replete with undisputed evidence from Board of Education members and others with firsthand knowledge of the legitimate reasons for the Board of Education's April 27, 2004 vote to cease administering the grant. There is no evidence creating a question of fact in this regard. Nor is there evidence that the District first considered relinquishing the grant after plaintiffs spoke out on the issue of examinations; indeed, there is undisputed evidence that Board of Education members had questioned the District's continued administration of the grant as early as 1993. Further, there is no temporal proximity between

---

[1] The determination that plaintiffs – like thousands of other Civil Service employees – were required to take competitive examinations cannot reasonably be viewed as an adverse employment action. In any event, the Saratoga County Civil Service Department made this determination, not the District or the Board of Education.

-14-

plaintiff's speech and the relinquishment of the grant; well over a year elapsed between the January 8, 2003 meeting at which Ms. Wall read her statement and the Board of Education's vote on April 27, 2004 to relinquish the grant. Also, the vote to cease administering the grant affected all Head Start Program employees, not just plaintiffs and their supporters, thus militating against an inference that the Board of Education members were motivated by a desire to retaliate against plaintiffs and others who appeared at the January 8, 2003 meeting. And finally, plaintiffs' allegations that after the January 8, 2003 Board of Education meeting, Dr. Gratto reprimanded them for "making him look stupid" and that defendant Carrol Brewer, Director of Pupil Services at the Head Start Program, referred to Ms. Ford as "difficult" are too isolated and trivial to raise a question of fact regarding retaliatory motive.

On this record there is no evidence upon which a rational factfinder could find that, in retaliation for plaintiffs' speech, the District decided to forego a federal grant it had administered for almost 40 years, involving millions of dollars and affecting over 100 employees. Viewing the evidence in the light most favorable to plaintiffs, the Court finds that defendants are entitled to summary judgment on this issue.

**First amendment – association – retaliation**

The second protected activity on which plaintiffs rely is their alleged unionizing activities. Plaintiffs complain they were not allowed to participate in the CSEA unit formed by the Head Start Program non-administrative employees and "were not advised about becoming a separate unit or having individual contracts." It is undisputed that it was PERB that determined that the Head Start Program administrators could not be in the CSEA unit formed by the non-administrative employees. There is no evidence that this alleged situation was caused by any

-15-

defendants or that defendants were responsible for advising plaintiffs in this respect. Ms. Ford asserts in her affidavit that Head Start Program administrative employees "were later told that nothing would be negotiated with us until the line staff contract was finalized." In this regard, she cites only to Plaintiffs' Exhibit Q, "Head Start Family Education Program Administrative Meeting Minutes" dated January 23, 2003. Even if these minutes were to be accepted as competent evidence of what plaintiffs were told at the meeting, they do not support Ms. Ford's assertion that they were told "nothing would be negotiated with us until the line staff contract was finalized." Nor is the hearsay testimony by David A. Hunt, interim director of Head Start Program after it was relinquished by the District, competent evidence on this issue. Plaintiffs' conclusory assertion in their complaints that they "attempted to engage in union activity, including collective bargaining activity, with the District, but the District refused to negotiate and collectively bargain" with them is unsupported by any record evidence. Further, plaintiffs have presented no evidence that they and other Head Start Program administrators had formed an organization certified or recognized by PERB, *see* New York Civil Service Law, § 208, or that there was any other reason why the District was obligated to "negotiate and collectively bargain" with them. In fact, there is no competent evidence of any specific unionizing or other associative activity on the part of plaintiffs.

In any event, for the same reasons as set forth above in connection with plaintiffs' speech claims, no reasonable jury could find a causal connection between the relinquishment of the grant (or any other alleged adverse action) and plaintiffs' alleged assertion of their rights to free association. Viewing the evidence in the light most favorable to plaintiffs, the Court finds that defendants are entitled to summary judgment on this issue.

**Equal protection**

Plaintiffs do not base their equal protection claim on membership in a protected class, nor is there any evidence to support such a claim. A plaintiff not a member of a protected class may proceed on a theory of selective treatment or selective enforcement by demonstrating that defendants intentionally treated him or her differently from others similarly situated without any rational basis. *See Giordano v. City of N.Y.*, 274 F.3d 740, 751 (2d Cir. 2001). A court can properly grant summary judgment dismissing such a claim where it is clear that the evidence would not permit a reasonable factfinder to conclude that the plaintiff is similarly situated to the comparator. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790-91 (2d Cir. 2007). Here, although discovery is complete, plaintiffs proffer no competent evidence that defendants intentionally treated them differently from other similarly situated Head Start Program employees. Nor have they made any showing that defendants intentionally treated them differently from similarly situated District employees who were not employed in the Head Start Program.

Even if there is merit to plaintiffs' allegations that they should have been given a New York State Civil Service classification of exempt instead of competitive or were entitled to participate in Social Security and/or the New York State Employee Retirement System throughout their employment at the District's Head Start Program[2], they make no competent

---

[2] To the extent that plaintiffs' complaints may be read to seek a direct award of retroactive Social Security and/or retirement benefits, plaintiffs have failed to advance a cogent argument on this issue in their Memorandum of Law, nor are their references to the issue supported by competent evidence that would enable the Court to evaluate such claims. The hearsay statements on these issues in David A. Hunt's deposition testimony are not competent evidence of the matters asserted therein, nor do plaintiffs show that Mr. Hunt is qualified to address such issues. Plaintiffs also submit a letter dated February 13, 1991 from Thomas D. Wiley, Assistant Superintendent of the District, to a Program Specialist at Department of Health and Human Services' Regional Office, concerning the eligibility of Head Start Program employees for these benefits, as well as numerous documents including employment records and publications concerning Social Security and Civil Service. It is not the role of this Court on summary

-17-

showing that they were similarly situated with other employees who did receive such benefits.[3] For example, the deposition testimony of Patricia Nugent that she participated in Social Security and retirement since 1975, and the deposition testimony of Thomas D. Wiley, former District Superintendent, that he did not know why Nugent received retirement benefits, fall far short of meeting the requirement of competent non-conclusory factual evidence that would enable a factfinder to determine whether plaintiffs and Nugent were similarly situated in relevant respects. Viewing the undisputed record facts in the light most favorable to plaintiffs, the Court concludes that no reasonable factfinder could conclude that defendants denied plaintiffs equal protection of the laws.

**Remaining issues**

In the first point in their brief on this motion, plaintiffs cite *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and appear to argue that they have been subjected to a hostile work environment. Plaintiffs have made no claim of discrimination on the ground of race, color, sex, national origin, or religion. Plaintiffs give no rationale for their citation of *Faragher* and their reference to the protection against a hostile work environment afforded by 42 U.S.C. § 2000e-2(a), both of which appear to be wholly inapposite.

In their second point, plaintiffs assert what appears to be a procedural due process claim. No such claim appears in their complaint, nor have plaintiffs advanced any reason why, at the

---

judgment to comb through various documents in an effort to discern what arguments these represented plaintiffs would have made if their lawyer had articulated such claims. Moreover, such a procedure would severely prejudice defendants at this stage in the proceedings. On this record, any such claims, if indeed plaintiffs intended to make them, do not withstand summary judgment.

[3] Nor is there any evidence that these alleged employment actions occurred in retaliation for plaintiffs' exercise of their First Amendment or other protected rights.

summary judgment stage after the close of discovery, they should be permitted to assert such a claim for the first time. In any event, they have not demonstrated that they had a legitimate claim of entitlement to continued employment by the District under the circumstances appearing on the record, nor have they shown any other basis for such a claim.

The Court has concluded on this record that plaintiffs were not deprived of any federal statutory or constitutional rights. Thus, there is no basis to impose *Monell* liability upon the municipality for any such deprivation, and plaintiffs' *Monell* claims lack merit. *See Monell v. Department of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978).

Finally, the Court agrees with defendants that plaintiffs' conspiracy claims under 42 U.S.C. §§ 1983 and 1985 must be dismissed. Plaintiffs have not shown they were denied any federal statutory or constitutional rights or that any defendants agreed, expressly or tacitly, to deny them such rights. *See Cine SK8*, 507 F.3d at 792. Further, it appears that any conspiracy claims would be barred by the intracorporate conspiracy doctrine, on the ground that defendants are all part of a single municipal entity. *See generally Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."); *Rini v. Zwirn*, 886 Fed.Supp. 270, 292 (E.D.N.Y. 1995) (noting that the doctrine has been extended to public entities). There is no basis for a conspiracy claim.

Plaintiffs raise no other issues warranting consideration. On the undisputed facts, defendants have demonstrated that there exists no genuine issue of material fact and that they are entitled to judgment as a matter of law. Even considering plaintiffs' submissions (despite their

-19-

failure to comply with Local Rule 7.1(a)(3)), viewing the evidence most favorably to plaintiffs, and drawing all inferences in plaintiffs' favor, no reasonable factfinder could return a verdict for plaintiffs on any claim.

## CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 42) for summary judgment is granted; and it is further

ORDERED that the consolidated actions Nos. 1:05-CV-1198 and 1:05-CV-1199 are dismissed.

IT IS SO ORDERED.

March13, 2008
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge